IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01837-PAB-MEH

STEPHEN SUSINKA,

      Plaintiff,

v.

A. TRUJILLO,
J. WILCOX,
FEDERAL BUREAU OF PRISONS, and
UNITED STATES OF AMERICA,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Plaintiff Stephen Susinka ("Plaintiff"), a federal *pro se* inmate, brings claims in his Second Amended Prisoner Complaint ("Amended Complaint") against Defendants A. Trujillo ("Defendant Trujillo"), J. Wilcox ("Defendant Wilcox"), the Federal Bureau of Prisons ("BOP"), and the United States (collectively, "Defendants") regarding a number of incidents. ECF 39. His Amended Complaint asserts fourteen claims primarily under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680. *Id.* Plaintiff alleges violation of his First and Eighth Amendment rights, as well as a violation of the Administrative Procedures Act ("APA"). *Id.* Defendants filed the current Motion to Dismiss (ECF 44) and Motion for Partial Summary Judgment (ECF 45) under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56. As described below, the Court respectfully recommends that Defendants' Motion for Partial Summary Judgment be **granted** and Defendants' Motion to Dismiss be **granted in part and denied in part.**

**BACKGROUND**

The Court provides the procedural history of this case alongside the material, factual allegations (as opposed to legal conclusions, bare assertions, or conclusory allegations) made by Plaintiff in his Amended Complaint. *See* ECF 39. Plaintiff's allegations are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**I.     The July 3rd Incident**

The events giving rise to Plaintiff's claims occurred while he was in the custody of the BOP in Florence, Colorado.  Am. Compl. at ¶ 3. On July 3, 2019, after Plaintiff objected to taking a shower, Defendant Trujillo hit him multiple times, causing Plaintiff to fall on the shower floor. *Id.* ¶¶ 25-35. Then, Defendant Trujillo kneed and elbowed Plaintiff, pressing Plaintiff's face on the shower floor. *Id.* ¶¶ 36-37. Once the incident concluded, Plaintiff insisted several times that all camera footage of the incident be preserved. *Id.* ¶¶ 63-65.

On July 4, 2019, Plaintiff received an incident report, which claimed that he had assaulted Defendant Trujillo the previous day. *Id.* ¶ 45.  Plaintiff drafted an affidavit for the Unit Disciplinary Committee ("UTC"), contesting the incident report and requesting that the Disciplinary Hearing Officer ("DHO") review the camera footage of the incident. *Id.* ¶¶ 46-48. Plaintiff also prepared a supplemental statement, which the DHO refused to review. *Id.* ¶ 49. Defendants Trujillo and Wilcox then submitted allegedly false statements in support of the incident report, including that Plaintiff (1) was disruptive, (2) encouraged others to be disruptive, (3) attempted to headbutt Defendant Trujillo, and (4) attempted to assault Defendant Trujillo with his legs. *Id.* ¶¶ 50-52. Throughout the entire proceeding, Plaintiff continued to request that the camera footage be preserved. *Id.* ¶¶ 67-68, 70-72.

Approximately three weeks later, on July 30, 2019, Plaintiff was sanctioned for the July 3rd incident and lost twenty-seven days of Good Conduct Credit Time ("GCT"), sixty days of visitation, ninety days of phone use, and ninety days of commissary. *Id.* ¶ 53.  The DHO relied on Defendant Trujillo and Wilcox's statements and found the "video [] inconclusive due to angle of camera and inability to see inside the shower area." *Id.* ¶ 54. Plaintiff appealed the DHO decision to the BOP's North Central Regional Office ("NCR"), which discovered a "procedural error" and returned the incident report to the DHO for rehearing. *Id.* ¶¶ 56-57.

On December 14, 2019, Plaintiff received the incident report a second time, and on February 6, 2020, Plaintiff again asked the DHO to review the camera footage. *Id.* ¶¶ 59-60. When Plaintiff was served the incident report for the third time, on February 10, 2020, he requested the camera footage be preserved and reviewed. *Id.* ¶ 61. Finally, on February 12, 2020, the DHO informed Plaintiff that the incident report would be expunged and his twenty-seven days of GCT restored. *Id.* ¶ 62.

Plaintiff remained in his cell for months at a time due to anxiety, paranoia, and trauma stemming from the July 3, 2019 event. *Id.* ¶ 128.  He also asserts that he spent prolonged periods of time in a Special Housing Unit ("SHU"), where he had restricted access to the electronic law library and a limited diet. *Id.* ¶¶ 129, 127. Plaintiff was housed in the SHU from July 3, 2019 until October 20, 2020. *Id.* ¶ 190.

## II.   Plaintiff's Hunger Strike

After being housed with a "gunner," a homosexual inmate who chronically masturbates, Plaintiff began to refuse all meals, declared a hunger strike, and requested isolation on October 5, 2019. *Id.* ¶¶ 82, 110. Plaintiff specifically communicated to BOP staff that he was on a hunger strike; however, his hunger strike was not documented until he sustained a medical injury on

October 8, 2019. *Id.* ¶¶ 83-85. Staff continuously reported that Plaintiff was eating. *Id.* ¶ 93. BOP did not begin to monitor the hunger strike until October 15, 2019. *Id.* ¶¶ 91-92.  On October 17, 2019, Plaintiff fell after becoming unconscious, and he sustained injuries. *Id.* ¶ 96. However, he didn't receive medical attention for his injuries until October 20, 2019 and October 25, 2019. *Id.* ¶¶ 100-101.

After BOP began to monitor Plaintiff's hunger strike, he was placed in a holding cell from October 8, 2019 until October 24, 2019. *Id.* ¶¶ 103, 104. While there, he did not receive a shower, change of clothes, hygiene or cleaning supplies, or toilet paper. *Id.* ¶ 104. Additionally, the lights remained on at all times, and Plaintiff frequently woke up during the night due to cold temperatures. *Id.* ¶¶ 103, 106. After concluding his hunger strike, Plaintiff was housed with the same "gunner" as before. *Id.* ¶ 111. Almost immediately, Plaintiff and his cellmate had a physical alteration, and Plaintiff sustained injuries. *Id.* ¶ 112.

## III.   Retaliatory Events

After Defendants Trujillo and Wilcox were served the Complaint in this action on December 4, 2020, Plaintiff alleges that Plaintiff was wrongfully removed from his cell, along with his personal property and legal materials. *Id.* ¶¶ 118, 119.  Then, on May 4, 2020, Plaintiff received an incident report that a sharpened piece of metal was in his legal materials. *Id.* ¶ 121. Later, the DHO expunged that incident report. *Id.* ¶ 124. Plaintiff also asserts that his prolonged confinement in the SHU was retaliation. *Id.* ¶ 131.

Plaintiff sues Defendants Trujillo and Wilcox in their individual capacities for excessive force and retaliatory prosecution. *See id.* He sues Defendant Trujillo for deliberate indifference in violation of the Eighth Amendment. *Id.* Additionally, he asserts the following claims under the FTCA against the United States: assault and battery, malicious prosecution, abuse of the

administrative disciplinary process, negligence in monitoring his hunger strike, negligence in providing medical attention, negligent infliction of emotional distress, negligence in maintaining his cell conditions during his hunger strike, negligent cell placement, and negligent prolonged confinement in the SHU. *Id.* Finally, Plaintiff claims that the BOP violated the APA, 5 U.S.C. §§ 701-706. *Id.*

## LEGAL STANDARDS

### I.      Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Dismissal under it is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (recognizing federal courts are courts of limited jurisdiction and "there is a presumption against our jurisdiction"). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A motion to dismiss under Rule 12(b) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). Plaintiff bears the burden of establishing that this Court has jurisdiction to hear his claims. *Pueblo of Jemez v. U.S.*, 790 F.3d 1143, 1151 (10th Cir. 2015).

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms:

> First, a facial attack on the complaint's allegations as to subject-matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject-matter jurisdiction depends. When reviewing a factual attack on subject-matter jurisdiction, a district court may not

> presume the truthfulness of the complaint's factual allegations.  A court has wide
> discretion to allow affidavits, other documents, and a limited evidentiary hearing to
> resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a
> court's reference to evidence outside the pleadings does not convert the motion to
> a Rule 56 motion.

*Holt v. U.S.*, 46 F.3d 1000, 1002-03 (10th Cir. 1995); *see also Pueblo of Jemez*, 790 F.3d at 1148 n.4.

## II.    Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id. Twombly* requires a two-prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 680.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).  "The nature and specificity of the allegations required to state a plausible claim will

vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## III.   Fed. R. Civ. P. 56

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry

its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).  Only admissible evidence may be considered when ruling on a motion for summary judgment.  *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined.  *Celotex*, 477 U.S. at 322.  That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'"  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).  "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge."  *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).

## IV.   Treatment of a Pro Se Plaintiff's Complaint

A *pro se* plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Garrett v. Selby Connor Maddux & Janer*,

425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith v. U.S.*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## 12 (b)(1) ANALYSIS

Plaintiff asserts a number of claims under the FTCA, which Defendants argue are either not covered by the FTCA or must be dismissed under the FTCA's discretionary function exception. *See* ECF 44. Plaintiff also invokes the APA, which Defendants argue does not apply to the facts alleged by Plaintiff. *Id.* at 11-12. Defendants seek dismissal for claims six, ten, eleven, twelve, thirteen, and fourteen for lack of subject matter jurisdiction. *Id.* at 4.

## I.   FTCA

As a general rule, suits against the United States are barred by sovereign immunity. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). However, the FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674. The government has waived sovereign immunity "for injury or loss of property . . . caused

by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* § 1346. Here, the "law of the place" would be Colorado law. *See Meyer*, 510 U.S. at 478 (holding that the law of the State is "the source of substantive liability under the FTCA").

Plaintiff's Sixth claim alleges that the government was negligent in not monitoring his hunger strike. Am. Compl. at ¶ 169. Even when the Supreme Court recognized prisoner claims under FTCA, it maintained that the survival of those claims "depend[s] upon whether a private individual under like circumstances would be liable under state law." *United States v. Muniz*, 374 U.S. 150, 153 (1963). Plaintiff points the Court to the duty of care owed to prisoners under 18 U.S.C. § 4042 but cites no authority which recognizes a Colorado duty of care for prison staff to monitor an inmate on hunger strike, Resp. at 97, nor has this Court found any precedent. None of the case law cited by Plaintiff contemplates fact scenarios similar enough to the facts at hand to impose liability.[1] "As the party averring jurisdiction, [] the FTCA plaintiff [] bears the burden of proof to establish that the court possesses subject-matter jurisdiction based upon analogous [Colorado] private liability." *Pappas v. United States*, 617 F. App'x 879, 882 (10th Cir. 2015). Thus, the Court finds that Plaintiff has not met his burden and recommends Plaintiff's sixth claim be dismissed.

---

[1] Considering assaults like the one in *United States v. Muniz*, 374 U.S. 150 (1963), which Plaintiff cites, the Supreme Court later clarified that "it is inescapable that the phrase 'arising out of assault [or] battery' is broad enough to encompass claims sounding in negligence." *United States v. Shearer*, 473 U.S. 52, 56 (1985). Therefore, the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h), maintains the sovereign immunity of the Government for its employee's negligence in failing to prevent assaults and batteries. *Id.*

Plaintiff's Thirteenth claim alleges Negligent Infliction of Emotional Distress ("NIED") for assigning him a cellmate who was "disruptive, suicidal, assaultive," ignoring his hunger strike, failing to provide him basic provisions, filing false incident reports, and intimidating him. Am. Compl. at ¶ 193. In Colorado, the NIED tort requires "a plaintiff [] show that the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought." *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496-97 (Colo. App. 2011). The FTCA also provides that:

> No person convicted of a felony who is incarcerated . . . may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.

28 U.S.C. § 1346(b)(2). Here, Plaintiff does not allege any prior physical injury connected to his cellmate assignment, BOP staff ignoring his hunger strike, cell conditions, filing of false reports, or intimidation by BOP staff.  He alleges "disturbance" and that he was "at risk of physical harm," but not that the actions of the government caused him physical injury, or emotional injury linked back to a physical injury. Resp. at 139, 142. Even the "fallout" injury Plaintiff alleges occurred after BOP staff begin to monitor his hunger strike. Am. Compl. at ¶¶ 91, 96. Finally, Plaintiff alleges that he suffered physical injury due to the cold conditions of his cell. Resp. at 142. While the FTCA does not explicitly define "physical injury," this District understands "physical injury" to mean more than a de minimums injury. *Muhammad v. Sosa*, No. 06-cv-00763-WYD-BNB, 2008 WL 762253, at *4 (D. Colo. Mar. 19, 2008). This District has also held that "[a] [p]laintiff's allegation that he was cold is not sufficient to allege harm." *Wilson v. Romero*, No. 16-cv-02060-CMA-MJW, 2018 WL 899256, at *14 (D. Colo. Feb. 15, 2018).

Construing Plaintiff's claim liberally, however, the Court finds that Plaintiff does allege a prior physical injury connected to his "PSD, anxiety, and paranoia." Am. Compl. at ¶ 128; Resp. at 143. Plaintiff's injuries from the July 3, 2019 incident are central to his Amended Complaint, and those physical injuries are connected to later PSD, anxiety, and paranoia. *Id.* ¶¶ 25-37, 128. Therefore, the Court recommends that Plaintiff's Thirteenth claim not be dismissed for lack of jurisdiction, nor for failure to state a claim.

## II.   Discretionary Function Exception to the FTCA

There are exceptions to the FTCA wavier of governmental immunity, including for claims based on the discretionary acts or omissions of employees. *See* 28 U.S.C. § 2680(a). "The basis for the discretionary function exception was Congress' desire to prevent the judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988).

To determine whether the discretionary function exception applies, "a court must first consider whether the action is a matter of choice for the acting employee." *Id.* at 536. Conduct involves an element of judgment so long as there is no "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* Here, Plaintiff's Tenth, Eleventh, and Twelfth claims derive from Plaintiff's cell placement and the duration of time he was confined in the SHU. Am. Compl. at 29, 30. However, as Defendants argue, Plaintiff does not allege any statute, regulation, or policy that defines how long an inmate can be held in a SHU. ECF 44 at 6. Additionally, Plaintiff does not allege any statute, regulation, or policy that prohibits the placement of inmates with "gunners" despite an inmate's objection or mandate BOP staff to take into consideration the sexual preferences of cellmates when making placements. *Id.*

In his response, Plaintiff states, "BOP Policy does in fact dictate separation to avoid sexual harassment." Resp. at 120. He also cites the Prison Rape Elimination Act ("PREA") and argues that it mandates BOP staff to "intervene" in instances of sexual harassment. *Id.* at 127. However, as Defendants point out, PREA and any implementing regulation still allow BOP employees discretion in making cell placements to decrease instances of sexual harassment. ECF 75 at 2, 3, 5. "PREA leaves the [BOP] substantial discretion in applying the PREA and in determining the best measures to combat sexual abuse in a prison setting." *Tilga v. United States*, No. CV 14-256 JAP/RHS, 2014 WL 12783121, at * 16 (D.N.M. Dec. 5, 2014); *see also Gladney v. United States*, 858 F. App'x 221, 223 (9th Cir. 2021), *cert. denied,* 142 S. Ct. 909 (2022) (finding that PREA "explicitly grant[s] the BOP discretion in how to reduce the sexual assault of people in its charge").

Plaintiff also states in his response that a 2016 report from the Department of Justice set requirements for the BOP to review the status of inmates held in SHUs every ninety days, and to seek the approval of continued placements every sixty days. Resp. at 130. However, as Defendants point out, the decision to continue to hold an inmate in a SHU, though reviewed periodically, remains within the discretion of BOP staff. ECF 75 at 6. The Declaration of G. Wassell confirms that the SHU Review Committee meets regularly and "evaluat[es] an inmate's continue[d] confinement in the SHU." ECF 44-1 at ¶¶ 18-19. Thus, without addressing the wisdom of the BOP's decision to confine Plaintiff in the SHU from July 3, 2019 until October 20, 2020, the Court finds that the Plaintiff alleges no policy, regulation, or statute that sets an upward limit to the amount of time an inmate may be confined in a SHU.

In sum, Plaintiff alleges no BOP policy that mandates BOP employees to follow the directives of inmates when making cell placements, separate inmates with differing sexual

preferences, nor limit the amount of time an inmate is held in an SHU. Therefore, the conduct at issue in Plaintiff's Tenth, Eleventh, and Twelfth claims involve the discretion of BOP staff.

If the conduct does involve some judgment, then, "a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz by Berkovitz*, 486 U.S. at 536. "The exception, properly construed, [] protects only governmental actions and decisions based on considerations of public policy." *Id.* at 537. Here, Defendants argue that the decision of how long and with whom to hold inmates in the SHU are matters of prison security. ECF 44 at 8. The Court is persuaded that housing and cellmate assignments are "of the kind that the discretionary function exception was designed to shield." *Rinaldi v. United States*, 904 F.3d 257 (3d Cir. 2018) (quoting *Mitchell v. United States*, 225 F.3d 361, 363 (3d Cir. 2000); *see also Cohen v. United States*, 151 F.3d 1338 (11th Cir. 1998) (finding that "even if [18 U.S.C.] § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception). The Southern District of New York has also found that the discretionary function exception was designed to shield "the decision of whether and when to return an inmate from the SHU to the prison's general population." *Barone v. United States*, No. 12 Civ. 4103(LAK), 2014 WL 4467780, at *12 (S.D.N.Y. Sept. 10, 2014). "It is clear that balancing the need to provide security with the rights of the inmates to circulate and socialize within the prison involves considerations based on public policy." *Calderon v. United States*, 123 F.3d 947, 951 (7th Cir. 1997). Therefore, the Court finds that the discretionary function exception was designed to shield Defendants conduct alleged in Plaintiff's Tenth, Eleventh, and Twelfth claims.

Because the discretionary function exception applies to cell placement and SHU holding decisions, the Court lacks subject matter jurisdiction to hear Plaintiff's related claims.

Accordingly, the Court recommends that Plaintiff's Tenth, Eleventh, and Twelfth claims be dismissed.

## III.    APA

As Defendants argue and Plaintiff concedes, BOP disciplinary hearings are exempt from the APA. *Clardy v. Levi*, 545 F.2d 1241, 1244-46 (9th Cir. 1976); *see also Jordan v. Wiley*, 411 F. App'x 201, 213-14 (10th Cir. 2011). Plaintiff argues that the "After Action Review Investigation" and "Administrative Remedy 985716" should be reviewed under the APA but cites no authority to that end. Resp. at 152. Finding no authority independently, the Court recommends that Plaintiff's Fourteenth claim be dismissed.

## 12 (b)(6) ANALYSIS

Plaintiff's remaining claims seek recovery for violations of Plaintiff's constitutional rights or for a violation of state law under the FTCA. Defendants argue that Plaintiff fails to state a plausible claim upon which relief can be granted in his First, Second, Third, Fourth, Fifth, Eighth, and Ninth claims. ECF 44 at 13. Defendants also seek partial summary judgment for Plaintiff's Seventh claim for failure to exhaust. *See* ECF 45.

## I.    *Bivens* Remedy

Plaintiff's First, Fifth, and Seventh claims against Defendants Trujillo and Wilcox seek *Bivens* remedies for excessive force and deliberate indifference in violation of Plaintiff's Eighth Amendment rights as well as retaliation in violation of the First Amendment. Am. Compl. at ¶¶ 147, 165, 173.

A.    <u>New Context Inquiry</u>

A *Bivens* remedy is disfavored if the case presents a new context for the Court. *Ziglar v. Abbasi*, - U.S. -, 137 S. Ct. 1843, 1857 (2017). The Supreme Court has recognized the *Bivens*

remedy in only three cases: (1) *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) (a Fourth Amendment unreasonable search and seizure claim); (2) *Davis v. Passman*, 442 U.S. 228 (1979) (a Fifth Amendment equal protection claim concerning gender discrimination); and (3) *Carlson v. Green*, 446 U.S. 14 (1980) (an Eighth Amendment failure to provide adequate medical treatment claim). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855.

"[E]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857. The Supreme Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'" *Id.* (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). "If [a] case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new." *Id.* at 1859. "[E]ven a modest extension is still an extension." *Id.* at 1864. Here, Plaintiff's allegations involve a different type of "official action" than those alleged in *Carlson*, *Davis*, and *Bivens*. Plaintiff's First and Fifth claims concern the beating of a prisoner and false reporting of the incident as opposed to an official's medical treatment of an inmate like in *Carlson*, a police officer's arrest of a suspect like in *Bivens*, and a Congressman's actions toward staff like in *Davis*. *See* Am. Compl. at ¶¶ 147, 165. Indeed, the Supreme Court already found that "there is no *Bivens* action for First amendment retaliation" as the Plaintiff alleges in his Fifth claim. *Egbert v. Boule*, - U.S. -, 142 S. Ct. 1793, 1807 (2022).

Further, although the Supreme Court has extended a *Bivens* remedy for violation of the Eighth Amendment, it did so under different circumstances than those alleged in Plaintiff's First claim. *Carlson*, 446 U.S. at 14-17. In *Carlson,* the Supreme Court extended remedies for a prion official's failure to give an inmate adequate medical attention. *Id*. at 14. Here, Plaintiff's First

claim alleges excessive force. Am. Compl. at ¶ 147. The Tenth Circuit has distinguished excessive force claims from the claims in *Carlson,* despite the fact that both were brought under the Eighth Amendment. *Silva v. United States*, 45 F.4th 1134, 1137 (10th Cir. 2022). Therefore, the Court finds that Plaintiff's First claim is meaningfully different from *Carlson*, and thus constitutes a new context.

B.     *Bivens* Remedy Special-Factors Inquiry

Under *Egbert*, courts are now directed to think primarily of the harms of judicial intrusion, and not whether a *Bivens* remedy is appropriate for the facts of a particular case. *Egbert*, 142 S. Ct. at 1805. "[A] *Bivens* remedy will not be available if there are 'special factors counseling hesitation in the absence of affirmative action by Congress.'" *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). More to the point, a *Bivens* analysis "resolves to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803. If "there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed,'" a remedy shall not be extended. *Id.* at 1805 (quoting *Ziglar*, - U.S. -, 137 S. Ct. at 1858). And, if Congress has already provided a damages remedy for a cause of action, the court may not authorize a *Bivens* remedy. *Id.*

Here, Congress has already provided a damages remedy for Plaintiff's excessive force and retaliation claims. Plaintiff may seek relief from the BOP's Administrative Remedy Program. *See* 28 C.F.R. § 542.10. "So long as the plaintiff ha[s] an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability." *Corr. Servs. Corp.*, 534 U.S. at 69. "[I]t [does not] matter that 'existing remedies do not provide complete relief.'" *Egbert*, 142 S. Ct. at 1804. Applying *Egbert*, the Tenth Circuit in *Silva* had "little difficulty

concluding that the BOP Administrative Remedy Program is an adequate 'means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring.'" *Silva*, 45 F.4th at 1141. Therefore, the Court finds no authority to recognize a *Bivens* remedy as to Plaintiff's First and Fifth claims and recommends that they be dismissed.

C.    Prison Litigation Reform Act ("PLRA")

Under the PLRA, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Here, Defendants argue that there is no genuine issue of material fact as to whether Plaintiff exhausted his Seventh claim, entitling them to summary judgment on that claim. ECF 45 at 1. Under the BOP's Administrative Remedy Program, Plaintiff is required to engage with three formal levels of review by first filing a BP-9, then a BP-10, and finally a BP-11 to exhaust his administrative remedies. *See* ECF 45-1 at ¶ 4. Because failure to exhaust is an affirmative defense, Defendants carry the burden to prove that Plaintiff failed to meet the PLRA's exhaustion requirement. *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (considering that a plaintiff did not contest his failure to exhaust administrative remedies when assessing whether defendants met their burden of proof).

Here, Plaintiff alleges that he filed a BP-9 and BP-10, but never argues that he filed a BP-11. Resp. at 107- 110. Both Plaintiff and Defendants cite *Whitington v. Ortiz*, 472 F.3d 804 (10th Cir. 2007), but to differing ends. Resp. at 104; ECF 76 at 4. In *Whitington*, the Tenth Circuit held that a plaintiff had exhausted his administrative remedies after completing his third formal grievance filing. 472 F.3d at 808.  Here, Plaintiff does not contend that he ever filed his B-11. He construes the holding in *Whitington* broadly and argues that any delay in any stage of the grievance proceeding amounts to an "unavailable" remedy under the PLRA. Resp. at 104. To the contrary,

the Court finds that "a prison officials' alleged failure to respond does not excuse [Plaintiff's] failure to exhaust his administrative remedies." *Smith v. Beck*, 165 F. App'x 681, 685 (10th Cir. 2006). "Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 740 (2001)). Therefore, the Court recommends Plaintiff's Seventh claim be dismissed without prejudice for failure to exhaust administrative remedies, and Defendants' Motion for Partial Summary Judgment be granted.

## II.    FTCA Claims for the July 3, 2019 Incident and Subsequent Incident Report

Plaintiff's Second claim alleges assault and battery under the FTCA. Am. Compl. at ¶ 147. Both Plaintiff and Defendants agree that Plaintiff must allege "(1) the defendant acted either with the intent of making a contact with the person of the plaintiff or with the intent of putting the plaintiff in apprehension of such a contact; (2) the plaintiff was placed in apprehension of an imminent contact with his or her person by the conduct of the defendant; and (3) such contact was or appeared to be harmful or offensive." *Adams v. Corr. Corp. of Am.,* 187 P.3d 1190, 1198 (Colo. App. 2008). The parties do not dispute that "[t]he elements of battery are similar, except that the contact must have actually resulted," nor that the "law of Colorado requires the jury to conclude that the defendant both intended the contact and intended it to be harmful or offensive." *Adams,* 187 P.3d at 1198; *White v. Muniz*, 999 P.2d 814, 818 (Colo. 2000).  Here, Defendants argue that Plaintiff does not allege Defendants Wilcox and Trujillo intended the harmful contact or that the contact be harmful. ECF 44 at 24. However, as Plaintiff points out, "[j]uries may find it difficult to determine the mental state of an actor, but they may rely on circumstantial evidence in reaching their conclusion." *White*, 999 P.2d at 817.

Plaintiff alleges several facts that provide circumstantial support for his Second claim. First, in response to Plaintiff's comment "You guys are playing games! You guys know what you're doing!", Plaintiff alleges that Defendant Trujillo said, "do you know who you're talking to?" Am. Compl. at ¶ 28. Second, Plaintiff alleges that while he was restrained, Defendant Trujillo hit him in the face repeatedly with a closed fist, eventually causing Plaintiff to fall forward onto the shower floor. *Id.* ¶ 25, 31-36. Once face down on the floor, Plaintiff alleges the Defendant Trujillo stuck Plaintiff with his forearm, elbow, and knee. *Id.* ¶ 36-37. Third, Plaintiff alleges that Defendant Wilcox intervened and drove his knee into the Plaintiff's spine while Plaintiff was on the ground. *Id.* ¶ 41. Plaintiff asked Defendant Wilcox to "ease up" and Defendant Wilcox responded, "stop moving." *Id.* ¶ 43. Considering the circumstances and facts alleged, the Court finds that Plaintiff has properly pleaded facts upon which a jury could rely to find that Defendants Trujillo and Wilcox possessed the requisite intent for assault and battery. The Court recommends Plaintiff's Second claim not be dismissed.

Plaintiff's Third claim alleges malicious prosecution under the FTCA. *Id.* ¶ 154. Under Colorado law, the elements of a malicious prosecution claim are "(1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages." *Hewitt v. Rice*, 154 P.2d 408, 411 (Colo. 2007). "Malicious prosecution actions need not only be based on criminal prosecutions, but can also be based on, for example, civil suits and cross-claims, administrative proceedings, attachments, disciplinary actions, and arbitrations." *Erker v. Schmeeckle*, No. 21-cv-02012-KLM, 2022 WL 2966858, at *6 (D. Colo. July 27, 2022). Here, Plaintiff alleges that Defendants Wilcox and Trujillo filed a false incident report against the Plaintiff, leading to the revocation of his good conduct credit time, visitation days, phone days, and commissary privileges. Am. Compl. at ¶¶ 50, 51, 53,

155. The Court finds that the prison disciplinary proceeding alleged qualifies as an action under malicious prosecution and that Plaintiff properly pleaded the first element of malicious prosecution.

Plaintiff has also properly pleaded that Defendants Trujillo and Wilcox lacked probable cause and filed the incident report with malice. Here, Plaintiff admits that his tone was "not the most polite" but maintains that he complied with instructions from BOP staff. *Id.* ¶¶ 24-27. If facts used to support probable cause are in dispute, like whether the Plaintiff was "disruptive" in this case, a court may decline to find probable cause in a malicious prosecution context. *Wilkins v. DeReyes*, 528 F.3d 790, 802 (10th Cir. 2008). The Court therefore finds that Plaintiff alleges facts that support Defendant Trujillo and Wilcox lacked probable cause to file an incident report. Additionally, because the Colorado Supreme Court has held that "[m]alice is any motive other than a desire to bring an offender to justice," it is plausible that Defendants Trujillo and Wilcox filed the incident report against Plaintiff with malice. *See Montgomery Ward & Co. v. Pherson*, 129 Colo. 502, 509 (Colo. 1954). While Plaintiff was pinned on the shower floor face down by Defendant Trujillo, Plaintiff alleges that he said "I'm leaking! That's a lawsuit!" *Id.* ¶ 40. He also alleges that when Defendant Wilcox held him on the floor he said, "I'll put you in the lawsuit too then . . . Wilcox!" *Id.* ¶ 43. These comments provide at least some support for a jury to infer that Defendants Wilcox and Trujillo filed the incident report against Plaintiff for reasons other than to pursue justice. Even more, malice may be inferred from a lack of probable cause. *Pherson*, 129 Colo. at 509.  The Court recommends Plaintiff's Third claim not be dismissed.

Finally, Plaintiff's Fourth claim alleges abuse of process under the FTCA. *Id.* ¶¶ 164, 165. A claim for abuse of process requires proof of three elements: "(1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the

regular course of the proceedings, i.e., use of a legal proceeding in an improper manner; and (3) resulting damage." *Hertz v. Luzenac Group*, 576 F.3d 1103, 1117 (10th Cir. 2009) (*quoting Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 202 (Colo. App.1998)). "Abuse of process [] focuses not on the alleged wrongdoer's motivations or intentions, but on whether or not he used the legal system for its intended purpose." *Active Release Techniques, LLC v. Xtomic, LLC*, 413 P.3d 210, 213 (Colo. App. 2017). "[A]n improper use cannot be inferred simply from an improper motive; there must be, at the least, an attempt to *use* the process improperly." *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 374 (Colo. App. 1994).

Here, Defendants argue that Defendant Trujillo used the prison disciplinary process for its proper purpose: to determine if a prisoner, Plaintiff, violated prison rules. ECF 44 at 26. In response, Plaintiff alleges an improper motive for Defendant Trujillo, but not an improper use. Resp. at 95. "To properly allege abuse of process there must be some allegation that, viewed objectively, the judicial process is being used in an improper manner." *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, No. 17-cv-01595-CMA-MJW, 2019 WL 140710, at *5 (D. Colo. Jan. 9, 2019), *report and recommendation adopted*, 2019 WL 4667994 (D. Colo. Sept. 25, 2019). However, Plaintiff does not point the Court to an unrelated purpose for the incident report, or a purpose entirely outside of its scope. He simply alleges that Defendant Trujillo's motivations for filing the report were improper. *See* Resp. at 95.  Therefore, Plaintiff has not properly pleaded an abuse of process claim, despite alleging that Defendant Trujillo filed the incident report to oppress and harass him. *Id.* The Court recommends Plaintiff's Fourth claim be dismissed.

## III.    FTCA Claims for Deliberate Indifference and Cell Conditions

Plaintiff asserts his Eighth and Ninth claims under the FTCA, alleging that Defendants were negligent in failing to provide him prompt medical attention and basic provisions for his cell.

Am. Compl. at ¶¶ 177, 181.  In Colorado, to claim negligence, a plaintiff must allege "(1) the existence of a legal duty of care owed by the defendant to the plaintiff; (2) the defendant's breach of that duty; (3) a causal connection between that breach and injuries suffered by the plaintiff; and (4) resultant damages." *Abdo v. Balsick*, No. 18-cv-01622-KMT, 2019 WL 6726230, at *10 (D. Colo. Dec. 11, 2019). Assuming Plaintiff alleged a cognizable duty, Defendants argue that he does not allege facts to support that Defendants' delay in providing medical attention caused his injuries. ECF 44 at 27. In the Amended Complaint, however, Plaintiff alleges that during the time he waited for medical attention, he suffered "constant and significant pain in his nose" and "nerve pain in his teeth." Am. Compl. at ¶¶ 211, 212. In other words, it is plausible that "but for" the delay in medical treatment, Plaintiff would not have suffered the pain in his nose and teeth to the extent that he did. Ultimately, a jury must determine whether Defendants' delay in providing medical treatment was a cause in fact of Plaintiff's injuries. *Kaiser Found. Health Plan of Colorado v. Sharp*, 741 P.2d 714 (Colo. 1987) ("The existence of a causative link between the plaintiff's injuries and the defendant's negligence is a question of fact"). Thus, the Court does not recommend the dismissal of Plaintiff's Eighth claim for failure to state a claim.

Defendants also argue that Plaintiff does not allege an injury that resulted from his cell conditions. ECF 44 at 28. In response, Plaintiff primarily points the Court to the cold nights he endured in his cell. Resp. at 116. However, Plaintiff fails to adequately plead a cognizable injury. *See Wilson*, 2018 WL 899256, at *14, *supra*. Therefore, the Court recommends the dismissal of Plaintiff's Ninth claim for failure to state a claim.

## IV.     Leave to Amend

Generally, in a case involving a *pro se* litigant, the Tenth Circuit has held that if "it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading

or state a claim for relief, the court should dismiss with leave to amend." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). "Particularly where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements, dismissal of the complaint without prejudice is preferable." *Id.* However, "[c]omplaints drafted by pro se litigants . . . are not insulated from the rule that dismissal with prejudice is proper for failure to state a claim when 'it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him the opportunity to amend.'" *Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)).

In this case, the Court's recommendation to grant the Motion to Dismiss in part does not stem from "deficiencies . . . attributable to oversights [in] . . . [Plaintiff's] ignorance of special pleading requirements." *Reynoldson*, 907 F.2d at 126. Rather, despite Plaintiff's allegations, the Court finds, as a matter of law, relief for many of Plaintiff's claims is not available. Only two claims are recommended to be dismissed for failure to state a claim, and the Court finds that leave to amend as to those claims would be futile. There is no "potentially curable defect in the plaintiff's allegations," meriting the opportunity for Plaintiff to amend his Amended Complaint. *Stubblefield v. Henson*, No. 92-1045, 1993 WL 55936, at *2 (10th Cir. 1993). Therefore, the Court recommends that Plaintiff's First, Fourth, Fifth, Sixth, Ninth, Tenth, Eleventh, Twelfth, and Fourteenth claims be dismissed with prejudice with no leave to amend.

## CONCLUSION

The Court respectfully **recommends** Defendants' Motion for Partial Summary Judgment [filed June 27, 2022; ECF 45] be **granted** and Defendants' Motion to Dismiss [filed June 27, 2022;

ECF 44] **be granted in part and denied in part**.[2] The Court recommends granting summary judgment for Plaintiff's Seventh claim for failure to exhaust. Additionally, the Court recommends Plaintiff's First and Fifth claims be dismissed for lack of a *Bivens* remedy, Plaintiff's Tenth, Eleventh, Twelfth, and Fourteenth claims be dismissed for lack of subject matter jurisdiction, and Plaintiff's Fourth and Ninth claim be dismissed for failure to state a claim. The Court does not recommend dismissal for Plaintiff's Second, Third, Eighth, and Thirteenth claims.

Entered and dated this 19th day of December, 2022, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

---

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).